UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARIK DEHKO; SANDRA THOMAS; and
DEHKO FOODS, INC.
d/b/a SCHOTT'S SUPERMARKET;

   Case No.

   Plaintiffs,

v.

ERIC H. HOLDER, Jr., in his official capacity
as Attorney General of the United States;
DANIEL I. WERFEL, in his official capacity
as Acting Internal Revenue Service
Commissioner; and BARBARA L.
McQUADE, in her official capacity as United
States Attorney for the Eastern District of
Michigan,

   Defendants.

_____/

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. This is a civil-rights lawsuit seeking declaratory and injunctive relief.  Plaintiffs are Dehko Foods, Inc., d/b/a Schott's Supermarket ("Dehko Foods"); its president, Tarik Dehko; and Sandra Thomas, who is Tarik Dehko's daughter, an employee of Dehko Foods, and the joint signatory, with her father, on Dehko Foods' PNC Bank account from which the money at issue in this case was seized.  The three plaintiffs are sometimes referred to collectively as "the Dehkos." Plaintiffs challenge the Government's application of federal "structuring" law, 31 U.S.C. § 5324, and the Government's use of civil forfeiture to take money belonging to the Dehkos for allegedly

making deposits into Dehko Foods' PNC Bank account for the purpose of avoiding currency reporting requirements that apply to cash transactions above $10,000.

2. The Dehkos seek a declaratory judgment that whenever currency is seized in a civil forfeiture action, due process requires a pre-seizure or prompt post-seizure evidentiary hearing to determine whether the seizure was justified.

3. The Dehkos also seek a declaratory judgment that making frequent cash deposits into a bank account for legitimate business purposes does not violate federal structuring law. 31 U.S.C. § 5324.

4. The Dehkos seek injunctive relief as well, preventing the United States from seizing currency from the Dehkos and other persons or businesses similarly situated in the Eastern District of Michigan for alleged violations of federal structuring law, 31 U.S.C. § 5324, without (a) providing a pre-seizure hearing, or (b) committing itself to providing a prompt post-seizure hearing by a date certain following its receipt of a claim from the property owner.

5. This action is related to an ongoing civil forfeiture action, *United States of America v. Thirty Five Thousand Six Hundred And Fifty-One Dollars And Eleven Cents ($35,651.11) In U.S. Currency From PNC Bank Account Number XXXXXX6937*. The Dehkos will seek to have the two actions consolidated because they involve the same parties and arise from a common set of operative facts.

## JURISDICTION AND VENUE

6. Plaintiffs bring this civil-rights lawsuit pursuant to the Fifth Amendment to the United States Constitution.

7. The Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

8. Venue lies in this Court pursuant to 28 U.S.C. § 1391(e)(1) as this is a suit against officers of the United States and one of the Defendants resides in this district, and because a substantial part of the events or omissions giving rise to this action occurred in this district, and because the Plaintiffs reside in this district.

## PARTIES

9. Tarik "Terry" Dehko is the president and owner of Dehko Foods, Inc., d/b/a Schott's Supermarket. Sandra "Sandy" Thomas is his daughter, and she participates in the operation of the store, including making cash deposits into the store's bank account. Plaintiffs Terry Dehko and Sandy Thomas have both engaged in conduct that the Government alleges constitutes a violation of federal structuring law in a pending forfeiture action filed in this district and styled *United States of America v. Thirty Five Thousand Six Hundred And Fifty-One Dollars And Eleven Cents ($35,651.11) In U.S. Currency From PNC Bank Account Number XXXXXX6937*.

10. Plaintiff Tarik Dehko is a United States citizen and resident of Michigan.

11. Plaintiff Sandra Thomas is a United States citizen and resident of Michigan.

12. Plaintiff Dehko Foods, Inc., d/b/a Schott's Supermarket is a Michigan corporation with its principal place of business in Fraser, Michigan.

13. Defendant Eric H. Holder is the Attorney General of the United States and is sued in his official capacity.

14. Defendant Daniel I. Werfel is Acting Commissioner of the Internal Revenue Service and is sued in his official capacity.

15. Defendant Barbara L. McQuade is the United States Attorney for the Eastern District of Michigan and is sued in her official capacity.

## FACTUAL ALLEGATIONS

16.     Tarik Dehko was born in Iraq but moved to the United States in 1970 to join his parents and other family members in Michigan.  Dehko became an American citizen in 1974.

17.     Dehko purchased Schott's Supermarket, located on 14 Mile Road in Fraser, Michigan, in 1978.  Schott's Supermarket employs about 30 people, and Dehko runs the store with help from his daughter, Sandy Thomas.

18.     The retail grocery business necessarily involves significant amounts of cash.  Many customers still pay for their groceries using cash, and many stores, including Schott's Supermarket, cash customers' checks, sell money orders, and provide other services involving receipt or disbursement of cash.  Naturally, prudent business owners do not wish to accumulate large amounts of cash on the premises, but choose instead to deposit that money in a bank.

19.     Like many small businesses, Dehko Foods has a commercial general liability policy that covers various losses, including theft or other loss of cash.  As is common in such insurance policies, Dehko Foods' insurance policy limits reimbursement for cash losses to $10,000.

20.     Both because it is a sound business practice to avoid accumulating large amounts of cash at the location of a retail business, and because the store's insurance policy only covers cash losses up to $10,000, it has been a longstanding policy of Dehko Foods to make frequent deposits of cash into the store's bank account.  Relatedly, due to fear of robbery and other losses, it has been Dehko Foods' policy to not have employees carry more than $10,000 when going to the bank.  That practice is reflected in the store's Financial Procedures Manual prepared for Dehko Foods by its outside CPA firm.

21.     Representatives of the IRS visited Schott's Supermarket in 2010 to discuss banking laws, including currency reporting requirements and the law against structuring transactions to avoid those requirements. Terry Dehko discussed his store's cash-handling practices during that interview, and he signed a "Notification of Law" acknowledging his discussion with the IRS representatives regarding federal banking laws. The Notification of Law is laden with legal terms and references to United States Code sections and its contents made little sense to Mr. Dehko, for whom English is a second language.

22.     Representatives of the IRS returned to Schott's Market again in 2012 to perform a "Bank Secrecy Act" examination. The Bank Secrecy Act includes provisions requiring banks to report substantial cash transactions and prohibiting individuals from structuring transactions to avoid those requirements.

23.     During the Bank Secrecy Act examination in 2012, Dehko Foods' cash-handling practices were again discussed, and the individual performing the examination specifically reviewed the store's bank statements. Upon conclusion of the audit, Dehko Foods received a notice dated April 18, 2012, stating that "no violations were identified."

24.     Just nine months after informing the Dehkos that "no violations" of banking laws were identified in the course of an audit that included a review of their store's bank deposits, the IRS obtained a warrant in January 2013 authorizing it to seize the contents of the store's bank account at the PNC Bank, located about one block from the store.

25.     The Dehkos were neither given pre-seizure notice of the Government's intent to forfeit the contents of their store's bank account nor provided with an opportunity to be heard before a neutral magistrate before the forfeiture occurred.

26. The Government has not advised the Dehkos of any statutory process by which they may obtain a prompt post-seizure hearing before a neutral magistrate in order to contest the validity of the Government's seizure of their store's bank account.

27. The basis for the Government's civil forfeiture action was its assertion that Terry and Sandy violated federal law by "structuring" a series of cash deposits "to evade the currency reporting requirements in violation of Title 31, United States Code, Section 5324."

28. Terry Dehko and Sandy Thomas are the authorized signers of the PNC Bank account number XXXXXX6937 that belonged to Dehko Foods, before the Government removed the funds from the account.

29. Terry Dehko and Sandy Thomas have frequently deposited (or caused to be deposited) substantial amounts of cash in increments of less than $10,000 into Dehko Foods' PNC Bank account. Upon information and belief, that series of deposits is the sole basis upon which the Government bases its allegations that Terry Dehko and Sandy Thomas committed a violation of federal structuring law.

30. At no time before taking the money from Dehko Foods' PNC Bank account did the Government ask Terry or Sandy why they deposited cash into Dehko Foods' PNC Bank account the way they did.

31. Repeatedly making substantial cash deposits of less than $10,000 into a bank account is not illegal and does not, by itself, violate federal structuring law. It is only when cash transactions are structured "for the purpose of evading" currency transaction reporting requirements that such transactions are unlawful. See 18 U.S.C. § 5324(a).

32. Upon information and belief, the Government has no factual basis upon which to dispute the Dehkos' assertion that they deposited amounts less than $10,000 into Dehko Foods'

bank account for the legitimate business purposes described above, namely, their desire to avoid accumulating substantial amounts of cash on store premises and to avoid a situation where they might lose more cash through theft or accident than would be covered by the store's insurance policy.

33.    There can be legitimate business reasons for repeatedly making substantial cash deposits or withdrawals of less than $10,000 from a bank.

34.    Seeking to avoid accumulating substantial amounts of cash on the premises of a retail business is a legitimate reason for making repeated cash deposits of less than $10,000.

35.    Seeking to avoid non-covered losses is a legitimate reason for a business covered by an insurance policy with a limit of $10,000 for cash losses to make frequent cash deposits of less than $10,000.

36.    The Dehkos have not, in fact, ever made deposits of less than $10,000 for the purpose of attempting to evade federal currency transaction reporting requirements.

37.    The Government's seizure of Dehko Foods' entire bank account has caused the company substantial financial hardship.  Among other things, Dehko Foods has had significant difficulties with vendors and in some cases has been required to pay for inventory on a cash-on-demand basis instead of on credit as has been its customary arrangement with vendors, and the company's reputation has been damaged.

38.    Given the nature of their business, the Dehkos both need and intend to continue making substantial deposits of less than $10,000 into their store's bank account.  The Dehkos reasonably fear that if they continue making frequent cash deposits of less than $10,000 into their store's bank account they will be subject to future forfeiture actions by the IRS and the Department of Justice.  This fear is founded on the two visits they have previously had from IRS

agents, as well as the Government's conduct in the ongoing forfeiture action against them for making frequent cash deposits of less than $10,000 into their store's bank account in the past.

39. It is a bedrock principle of due process that property owners be given notice and an opportunity to be heard before a neutral magistrate when the Government takes their property. Among the concerns presented when the Government takes private property, through forfeiture or otherwise, are the possibility of erroneous deprivation, the interests of innocent owners, hardship caused by the loss of property, and, as in this case, the incentives created by legal regimes that allow the same agencies that initiate or participate in a seizure of property to benefit from it financially.

40. Besides failing to conduct an adequate investigation that would have included, at a minimum, determining whether the Dehkos had legitimate business reasons for the making the series of deposits documented in the Government's forfeiture complaint, the Government also failed to provide either a pre-seizure or prompt post-seizure hearing at which the Dehkos would have the opportunity to demonstrate, before a neutral magistrate, that the Government was not justified in seizing or retaining their property.

41. There is no compelling reason why the Government should be permitted to eschew the most basic requirements of procedural due process in forfeiture cases, and certainly no reason why it should be permitted to do so in this case.

42. Had the Dehkos received due process in their related civil forfeiture action, they would have had an opportunity to show that they make frequent cash deposits of less than $10,000 in order to avoid accumulating surplus cash on the premises of Schott's Supermarket.

43. Had the Dehkos received due process in their related civil forfeiture action, they would have had an opportunity to show that their insurance policy limits the coverage of losses

8

(including thefts) of cash to $10,000, necessitating frequent visits to the bank with less than $10,000.

44.     Had the Dehkos received due process in their related civil forfeiture action, they would have had an opportunity to demonstrate that they had no intention or purpose to evade currency reporting requirements.

## INJURY TO PLAINTIFFS

45.      The $35,651.11 taken by the Government from Dehko Foods' PNC Bank account represented the operating funds of a lawful business with numerous financial obligations, including vendors and employees to pay, inventory to maintain, utility bills, and a monthly rental payment.  In fact, Terry Dehko was just preparing to pay his monthly bills when representatives from the Government arrived at Schott's Supermarket to tell him that they had seized all of the money in the store's bank account.

46.     By using their personal savings, the Dehkos have managed to keep Schott's Supermarket running, but it has not been easy.  The Government's seizure of the store's operating funds has had dire financial consequences and has significantly impaired the Dehkos' standing and reputation with vendors and made it much more difficult for them to conduct regular store operations.

47.     As a result of the Government taking their store's entire operating account of $35,651.11 abruptly and without notice, the Dehkos were unable to pay all vendors on time in recent months, leading some vendors to terminate credit to Schott's Supermarket and increasing the hardship on the company.

48.     The forfeiture action has also caused Terry and Sandy to suffer significant stress and anxiety.  They have never been accused, let alone convicted, of any crime, and the

Government's baseless allegations of serious financial improprieties and criminal violations of federal structuring law in this case have inflicted a significant emotional toll on the Dehkos.

49. The stress and anxiety caused by the Government's groundless forfeiture action have been exacerbated by the absence of any process by which the Dehkos may obtain a prompt hearing before a neutral magistrate with the power to order the Government to return their property during the pendency of the forfeiture action. The Government seized the PNC Bank account belonging to Dehko Foods on or about January 22, 2013. Under federal civil forfeiture procedure, codified at 18 U.S.C. § 983, the Government has up to 60 days after the seizure of property to inform potential claimants of their intention to proceed with civil forfeiture. Once notified, a claimant must make a formal claim of its interest in the seized property to the seizing agency, in this case the IRS. Once that claim is made, the United States has up to 90 days to file its complaint for civil forfeiture with the District Court. At no time during this lengthy process has the government offered to provide, or advised the Dehkos about the availability of, any post-seizure hearing process to determine the probable validity of the Government's seizure of their money.

50. Based on the Government's conduct in this case and others of which they have knowledge, the Dehkos reasonably fear additional future forfeiture actions if they continue making frequent cash deposits of less than $10,000, as they have every intent to do and as is an integral part of their normal business practices.

## LEGAL CLAIMS

### Count I

### Declaratory judgment that Tarik Dehko and Sandra Thomas did not violate federal structuring law

51. Plaintiffs re-allege and incorporate every allegation set forth in paragraphs 1 through 50 as though fully set forth herein.

52. Making repeated cash deposits of substantial amounts less than $10,000 is not unlawful unless done for the purpose of evading currency transaction reporting requirements.

53. Because the Dehkos did not deposit cash into the PNC Bank account belonging to Dehko Foods, Inc., for the purpose of evading currency transaction reports, they have not violated 31 U.S.C. § 5324(a).

54. Tarik Dehko, Sandra Thomas, and Dehko Foods, Inc., request a declaratory judgment that the conduct alleged in the Government's forfeiture complaint styled *United States of America v. Thirty Five Thousand Six Hundred And Fifty-One Dollars And Eleven Cents ($35,651.11) In U.S. Currency From PNC Bank Account Number XXXXXX6937* was lawful and did not violate federal structuring law, 31 U.S.C. §5324.

### Count II

### Declaratory and injunctive relief regarding violation of due process for failing to provide adequate notice and hearing in connection with the *ex parte* forfeiture of property

55. Plaintiffs re-allege and incorporate every allegation set forth in paragraphs 1 through 50 as though fully set forth herein.

56. Federal civil forfeiture law fails to provide a process for a pre-seizure or prompt post-seizure hearing before a neutral magistrate to determine whether the Government is justified in seizing, or is justified in retaining, seized currency, prior to a final judgment of forfeiture.

57. Tarik Dehko, Sandra Thomas, and Dehko Foods, Inc., request a declaratory judgment that the Due Process Clause of the Fifth Amendment requires either a pre-seizure or prompt post-seizure hearing in every civil forfeiture action where property is seized prior to final judgment.

58. Tarik Dehko, Sandra Thomas, and Dehko Foods, Inc., request injunctive relief, enjoining the Government from seizing their property—or the property of any others in the Eastern District of Michigan—upon an allegation of a violation of 31 U.S.C. § 5324, without ensuring a pre-seizure or prompt post-seizure evidentiary hearing at which claimants may challenge the factual basis of that seizure.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court enter a final judgment in favor of them as follows:

a. Declare that because Plaintiffs did not make deposits into PNC Bank for the purpose of evading currency transaction reports, they have not violated 31 U.S.C. § 5324;

b. Declare that the conduct alleged in the Government's forfeiture complaint styled *United States of America v. Thirty Five Thousand Six Hundred And Fifty-One Dollars And Eleven Cents ($35,651.11) In U.S. Currency From PNC Bank Account Number XXXXXX6937* was lawful and did not violate federal structuring law, 31 U.S.C. §5324

c. Declare that the Due Process Clause of the Fifth Amendment requires either a pre-seizure or prompt post-seizure hearing in civil forfeiture actions where property is seized prior to final judgment; and

d. Enjoin the Defendant United States from seizing Plaintiffs' property—or the property of any others in the Eastern District of Michigan—for alleged violations of federal

12

structuring law, 31 U.S.C. § 5324, without providing a either a pre-seizure hearing or committing itself, as a condition of issuance of a forfeiture warrant, to providing a prompt post-seizure evidentiary hearing at which claimants may challenge the factual basis of the seizure.

  e.  For an award of attorney's fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

  f.  For such further legal and equitable relief as the Court may deem just and proper.

          Respectfully submitted,

         **INSTITUTE FOR JUSTICE**

Dated: September 25, 2013  By:  /s/ Clark M. Neily III
          Clark M. Neily III (DC Bar No. 475926)
          Lawrence G. Salzman (CA Bar No. 224727)
          INSTITUTE FOR JUSTICE
          901 North Glebe Road, Suite 900
          Arlington, VA 22203
          Tel: (703) 682-9320;
          Fax: (703) 682-9321
          Email: cneily@ij.org; lsalzman@ij.org

         **DUNN COUNSEL PLC**

         Stephen J. Dunn (P38182)
         2855 Coolidge Hwy., Suite 210
         Troy, MI  48084
         Tel: (248) 643-8130
         Fax: (248) 928-1295
         Email: sjd@dunncounsel.com

         *Attorneys for Claimant/Counterclaimant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Complaint for Declaratory and Injunctive Relief was filed through the Electronic Court Filing system on September 25, 2013, and was served on the following via a third party process server:

Eric H. Holder, Jr.
Attorney General
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001
Tel: (202) 514-2001

Daniel I. Werfel
Acting IRS Commissioner
Internal Revenue Service
1111 Constitution Avenue, NW
Washington, DC 20004
Tel: (202) 622-5000

Barbara L. McQuade
U.S. Attorney for the Eastern District of Michigan
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Tel: (313) 226-9100

/s/ Clark M. Neily III
INSTITUTE FOR JUSTICE