UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARIK DEHKO, SANDRA
THOMAS, DEHKO FOODS, INC.
d/b/a SCHOTT'S SUPERMARKET
and MARK ZANIEWSKI d/b/a
METRO MARATHON,

      Plaintiffs,

v.

ERIC HOLDER, in his official
capacity as United States Attorney
General, JOHN KOSKINEN[1], in
his official capacity as Commissioner
of Internal Revenue, and BARBARA
MCQUADE, in her official capacity as
United States Attorney for the Eastern
District of Michigan,

      Defendants.

Case No. 13-14085

HON. TERRENCE G. BERG

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT (DKT. 21)**

In this lawsuit, Plaintiffs Dehko Foods, Inc., d/b/a Schott's Supermarket ("Dehko Foods"); its president, Tarik Dehko ("Mr. Dehko"); Sandra Thomas, who is Mr. Dehko's daughter, and an employee of Dehko Foods ("Ms. Thomas"); and Mark Zaniewski ("Mr. Zaniewski"), owner and operator of a Metro Marathon service station (collectively "Plaintiffs") seek a declaratory judgment holding that due

---

[1] Plaintiffs' Amended Complaint – filed on December 10, 2013 – named Daniel Werfel, then the Acting Commissioner of Internal Revenue, as a defendant (Dkt. 15). On December 23, 2013, John Koskinen was sworn in as the Commissioner of Internal Revenue. Thus, Commissioner Koskinen is automatically substituted as a Defendant in this action. *See* Fed. R. Civ. P. 25(d).

process requires a pre-seizure or prompt post-seizure evidentiary hearing, whenever currency is seized in a civil forfeiture action, in order to determine whether the seizure was justified (Dkt. 15 ¶ 2). Plaintiffs also seek a declaratory judgment that the conduct alleged against them in two recently dismissed civil *in rem* forfeiture actions (E.D. Mich. Case Nos. 13-13118 & 13-13990) – structuring bank deposits, that is, making a series of sub-$10,000 bank deposits to avoid Treasury Department reporting requirements, was lawful and did not violate the federal anti-structuring statute, 31 U.S.C. § 5324. Plaintiffs apparently want to engage in similar conduct in the future, and seek this remedy so that they will not be targeted by civil *in rem* forfeiture actions if they do so.

Presently before the Court is a motion to dismiss the amended complaint (Dkt. 21) by Defendants Eric Holder, John Koskinen and Barbara McQuade. (collectively, "Defendants"). Plaintiffs filed a response (Dkt. 23), and the Court heard oral argument on February 19, 2014. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.

## BACKGROUND

This case arose out of two civil *in rem* forfeiture actions[2] brought by the United States of America against the bank accounts of two local businesses. The IRS seized the bank accounts of a grocery store (Dehko Foods) and a gas station (Metro Marathon) for alleged violations of 31 U.S.C. § 5324, a statute which

---

[2] *United States of America v. $35,651.11*, E.D. Mich. Case No. 13-13118 (Berg, J.) and *United States of America v. $33,244.86*, E.D. Mich. Case No. 13-13990 (Cleland, J.).

prohibits conduct known as "structuring."[3] In the forfeiture complaints, the Government contended that both businesses made a series of sub-$10,000 cash deposits into their bank accounts, for the purpose of avoiding the filing of currency transaction reports with the Treasury Department. Both underlying forfeiture actions were voluntarily dismissed by the Government, with prejudice. Plaintiffs did not oppose the Government's request to dismiss the underlying forfeiture actions. The reason the Government voluntarily dismissed both forfeiture actions was technical and procedural, but relatively simple: the Government filed the forfeiture complaints too late. *See, e.g., United States v. Funds from Fifth Third Bank Account,* 13-11728, 2013 WL 5914101 (E.D. Mich. Nov. 4, 2013) (Cox, J.). In light of Judge Cox's November 4, 2013 decision, the Government voluntarily chose to dismiss the complaints and gave up on the seizures of Plaintiffs' bank accounts.

In both prior forfeiture actions, Plaintiffs were represented by a public interest law firm, the Institute for Justice. Part of the litigation strategy employed

---

[3] Federal law requires financial institutions to file reports with the Treasury Department for any cash transaction exceeding ten thousand dollars ($10,000). *See* 31 U.S.C. § 5313; 31 C.F.R. § 103.22. It is illegal for any person to structure a transaction for the purpose of evading the financial institution's reporting requirement. *See* 31 U.S.C. § 5324(a)(3). The applicable regulations define structuring by reference to both the *actus reus* and *mens rea* of § 5324:

> [A] person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements…. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. § 103.11(gg). The Government may seek civil forfeiture of any funds involved in, or traceable to, structured transactions which violate § 5324. *See* 31 U.S.C. § 5317(c)(2).

by Plaintiffs in opposing the underlying forfeiture actions was to demand "prompt post-seizure hearings" and an immediate return of the seized currency, pending final judgment (*see*, E.D. Mich. Case No. 13-13118 (Berg, J.), Dkt. 19; Case No. 13-13990 (Cleland, J.), Dkt. 12). This Court heard oral argument on Dehko Foods's motion on October 23, 2013. Less than one month later – on November 15, 2013 – the Government moved to voluntarily dismiss the forfeiture case concerning Dehko Foods's currency (E.D. Mich. Case No. 13-13118, Dkt. 35). Dehko Foods did not oppose the Government's request to voluntarily dismiss and, on November 21, 2013, the Court dismissed that forfeiture action with prejudice. *Id.*, Dkt. 37. This dismissal was entered before the Court ruled on Dehko Foods's request for a "prompt post-seizure hearing."

The forfeiture case concerning Metro Marathon was also dismissed with prejudice on November 21, 2013, by Judge Cleland, in response to the Government's unopposed motion for voluntary dismissal (E.D. Mich. Case No. 13-13990, Dkt. 14). Judge Cleland never heard oral argument on Metro Marathon's request for a "prompt post-seizure hearing," and never ruled that such a hearing was warranted, prior to dismissing that case.[4]

---

[4] Not insignificantly, Plaintiffs were awarded attorneys' fees against the Government, pursuant to 28 U.S.C. § 2454(b)(1)(A), since they "substantially prevailed" in the forfeiture cases – $46,500 to Dehko Foods and $25,000 to Metro Marathon.

In this remaining, somewhat vestigial[5] civil action, Plaintiffs seek essentially the same relief, in the form of declaratory judgments that they previously sought in contesting the prior, dismissed, forfeiture cases.

## DISCUSSION

### A.  *Standard for Motion to Dismiss*

Defendants move to dismiss for lack of subject matter jurisdiction. Where subject matter jurisdiction is challenged in a Rule 12(b)(1) motion, the plaintiff bears the burden of proving jurisdiction. *See Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *See* Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

A facial attack challenges the sufficiency of the pleading itself. Where the Rule 12(b)(1) motion presents a facial attack, the Court accepts the material allegations in the complaint as true and construes them in the light most favorable

---

[5] On August 8, 2013, Dehko Foods asserted claims against the Government as a counterclaim in the forfeiture action against its funds (E.D. Mich. Case No. 13-13118, Dkt. 7). The Government moved to dismiss Dehko Foods's counterclaim, as counterclaims are not permitted in civil *in rem* forfeiture actions. *See, e.g., United States v. $22,832.00 in U.S. Currency*, 12-01987, 2013 WL 4012712 (N.D. Ohio Aug. 6, 2013). In response to the Government's motion to dismiss its counterclaim, Dehko Foods withdrew the counterclaim (*Id.,* Dkt. 18) in the forfeiture action on September 25, 2013, and filed this separate civil action on the same day (Dkt. 1). Metro Marathon did not file a counterclaim in the forfeiture action against its funds, but was added as a Plaintiff in this case on December 10, 2013 (Dkt. 15).

to the nonmoving party, similar to the standard for a Rule 12(b)(6) motion. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)).

In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *Id.* Where the motion presents a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the Court weighs the evidence to determine whether subject matter jurisdiction exists. On a factual attack, the Court has broad discretion to consider extrinsic evidence, including affidavits and documents, and can conduct a limited evidentiary hearing if necessary. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In this case, the Government is making a factual challenge to the Court's jurisdiction.

Defendants also move to dismiss the Amended Complaint pursuant to Rule 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v.*

*Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a plaintiff] must plead enough factual matter that, when taken as true, state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007) (internal quotations omitted). Plausibility requires showing more than the "sheer possibility of relief but less than a probab[le] entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also *Koubriti v. Convertino*, 593 F.3d

7

459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335–36. If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335–36).

### B. *The Court Lacks Jurisdiction Over This Matter, Thus This Case Is Dismissed Under Rule 12(b)(1).*

"Article III of the United States Constitution empowers the federal courts to hear only 'cases or controversies,' U.S. Const. art. III, § 2, cl. 1, a cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir. 2011). The case or controversy requirement also has been referred to as justiciability, which is comprised of several overlapping doctrines including standing, mootness, and ripeness. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). The Supreme Court has found that "no justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be

8

adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Under Article III, courts are required to "avoid issuing advisory opinions based upon hypothetical situations." *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995).  That is, a court's judgment "must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted). Determining whether an opinion would be advisory is interrelated with the question of whether there exists a case or controversy: "The requirements of standing, ripeness, and mootness guard against the issuing of advisory opinions." *State of Ohio ex rel. Celebrezze v. United States Dep't of Transp.*, 766 F.2d 228, 232 (6th Cir. 1985).

     Throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).  The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent," not conjectural or hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

9

In this case, Plaintiffs have asked the Court to declare that the conduct alleged in the two forfeiture cases was lawful.[6] Because the two prior forfeiture complaints have been dismissed with prejudice, there is no "live" controversy regarding the conduct of Plaintiffs. If Plaintiffs wished to obtain a ruling indicating that their prior conduct was lawful, they could have opposed the Government's motions to voluntarily dismiss (with prejudice) the prior forfeiture actions, and could have proceeded to a trial on the merits. Such a trial would have either proven that Plaintiffs acted with the unlawful intent of evading the reporting requirements, in which case the funds would have been forfeitable, or would have shown that there was insufficient proof to establish that Plaintiffs acted with such

---

[6] There were no factual findings made in the prior, dismissed, forfeiture actions. Consequently, the Court has no evidentiary ground upon which to rest a legal conclusion concerning the legality or non-legality of Plaintiffs' prior practices of making deposits under $10,000. Even less firm is any factual foundation upon which to speculate as to what Plaintiffs' future such practices may be. Federal law makes it illegal for any person "to structure ... any transaction with one or more domestic financial institutions" *for the purpose of evading the Treasury Department's reporting requirements.* 31 U.S.C. § 5324(a)(3). Intent is an element of a forfeiture claim based on a violation of the anti-structuring statute. *See United States v. $9,980 seized from Cmty. Bank & Trust Account No. 067-0022713*, 859 F. Supp. 2d 1281, 1283 (M.D. Fla. 2012). If Plaintiffs have no intent to evade the reporting requirements, it is that lack of intent, not any declaratory judgment by this Court, which will protect them from future forfeiture actions. If Plaintiffs should chose to make sub-$10,000 deposits for the purpose of evading the reporting requirements, no declaratory judgment stating that it is lawful to engage in such conduct in the absence of such a purpose can insulate them from suit. Plaintiffs allege, in this case, that since they "did not deposit cash into their businesses' bank accounts for the purpose of evading currency transaction reports, they have not violated 31 U.S.C. § 5324(a)" (Dkt. 15 ¶ 110). In the previously dismissed forfeiture actions, the Government contended that Plaintiffs' numerous sub-$10,000 deposits, conducted after being informed by IRS agents of the anti-structuring rules, gave rise to the opposite inference. The Government's prior allegations were sufficient to institute forfeiture proceedings against Plaintiffs. *See, e.g., United States v. $263,327.95*, 936 F. Supp. 2d 468, 475 (D.N.J. 2013) (holding that it was reasonable to infer that a forfeiture claimant knew about the reporting requirements and acted with the intent to evade those requirements, in light of the fact that the claimant could not have spent an entire year depositing large sums of money without making a single deposit of over $10,000, unless he do so intentionally).

intent, in which case judgment would have been entered in Plaintiffs' favor and the funds returned. Plaintiffs chose not to litigate this factual question, and the Court cannot now resolve this question in Plaintiffs' favor when there is no longer any dispute about the forfeiture of any funds. For these reasons, the Court concludes that there no longer exists any case in controversy that may be resolved by issuing the declaratory judgment requested by Plaintiffs, and to do so would be to offer an advisory opinion.

Likewise, the issue concerning the availability of "prompt post-seizure hearings" in civil forfeiture cases is also moot – there is no forfeiture action currently pending against Plaintiffs, nor is there any evidence establishing that Plaintiffs will be the target of future forfeiture actions. Prior to the dismissal of the prior forfeiture complaints, Plaintiffs each filed motions for prompt post-seizure hearings. Indeed, Dehko Foods presented oral arguments on this precise issue to this Court. Before the Court could rule on this issue, the prior forfeiture actions were voluntarily dismissed in response to the Government's unopposed motions.

Plaintiffs are essentially asking the Court to establish a judicially-created procedural requirement that will apply to future forfeiture cases that have not yet been filed. Plaintiffs argue that the Court should hold that, in the event that the Government attempts to seize funds from them again, they are entitled to a "prompt due process hearing." The question of Plaintiffs' legal entitlement to such a hearing was far from clear while this case was a live controversy and the forfeiture still pending; it is no clearer now that the controversy has been resolved. The

"prompt post-seizure hearing" bridge may be crossed, or not, when it is come to in the course of active litigation. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006).

Plaintiffs have failed to establish that the issues in the present lawsuit amount to a "substantial controversy between the parties." The Court therefore lacks jurisdiction at this stage of the litigation, and the case is dismissed. *See* Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the amended complaint (Dkt. 21) is **GRANTED**. Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: June 11, 2014

Certificate of Service

I hereby certify that this Order was electronically submitted on June 11, 2014, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager

12